UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOSSEIN ZEINALI,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>RAYTHEON COMPANY,<br><br>　　　　　　　　　　Defendant. | CASE NO. 07cv1852-MMA (CAB)<br><br>**ORDER RE: PLAINTIFF'S DISPARATE TREATMENT CLAIM** |

This is an employment discrimination case brought by Plaintiff Hossein Zeinali against his former employer Defendant Raytheon Company. Zeinali alleges that Raytheon failed to promote him, and ultimately terminated his employment, because he is Iranian. At issue is the viability of Zeinali's disparate treatment claim in so far as it is based on the denial of his applications for promotion between August 2004 and January 2005. The Ninth Circuit has indicated upon remand that the issue is properly before this Court.[1] *See Zeinali v. Raytheon Co.*, 2011 U.S. App. LEXIS 7023, 1-2 (9th Cir. 2011) (internal citations omitted) ("Because the district court did not address Raytheon's contention that Zeinali's failure-to-promote claim is time-barred, we refrain from addressing that issue here."). The parties represent that the record is complete and no further briefing is necessary. Accordingly, the Court rules as follows.

---

[1] The rule of mandate prohibits a lower court, upon receiving the mandate of a higher court, from "vary[ing] it or examin[ing] it for any other purpose than execution." However, "the lower court may consider and decide any matters left open by the mandate of the court." *United States v. Cote*, 51 F.3d 178, 181-82 (9th Cir. 1995) (alterations and quotation marks omitted), quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-56 (1895).

# **BACKGROUND**

The following factual background is taken directly from the appellate court's opinion reversing and remanding this matter for further proceedings in accordance therewith. *See Zeinali v. Raytheon Co.*, 636 F.3d 544 (9th Cir. 2011).[2]

> Raytheon hired Zeinali in November 2002 in the position of "Senior Multi Disciplined Engineer." Raytheon informed Zeinali that this position required him to obtain a "Secret"-level security clearance, and informed Zeinali that his continued employment was contingent on obtaining such clearance. Although Zeinali's initial request for an interim clearance was rejected, Raytheon retained him while a final clearance decision was pending.
>
> In November 2004, Zeinali transferred to a different engineering position, "Senior Systems Engineer," which, according to Raytheon, also required a "Secret" clearance. Because he still lacked the clearance, Zeinali performed the role of cost account manager, which was "a financial oversight and record-keeping job" that did not require him to use classified information.
>
> Following the November 2004 transfer, Zeinali received positive feedback regarding his job performance. In 2006, one of his supervisors gave him an "individual achievement award[ ]," and another supervisor, Richard Zohn, testified that Zeinali's performance improved that year. Nevertheless, Zeinali was transferred again in the fall of 2006, both because of his displeasure at not receiving a promotion and because of a dispute in which a program manager failed to inform him about a temporary budget change.
>
> On September 26, 2006, the Department of Defense informed Zeinali's attorney that Zeinali's request for a security clearance had been denied by the Defense Office of Hearings and Appeals. The cover letter noted that Zeinali could not re-apply for at least one year. After Raytheon learned of the denial, it conducted internal discussions regarding Zeinali's future with the company. Ultimately, the engineering department's manager, David Robinette, recommended that Zeinali be terminated. Raytheon fired Zeinali on November 7, 2006.
>
> Robinette explained in his deposition that there were "multiple factors" motivating the decision to terminate Zeinali. Zeinali's "inability to obtain [a] security clearance was a prime factor," and was compounded by "the work forecast," which showed a lack of "long lived, . . . unclassified assignments," as well as "Zeinali's work performance and feedback . . . on [his] most recent work performance levels." Ultimately, though, Raytheon decided to terminate Zeinali because he did not obtain a clearance. Robinette stated that if Zeinali had received a clearance, he would not have been fired in spite of the declining work forecast, or his unfavorable job performance.
>
> On December 19, 2006, Zeinali filed his first of three individual complaints with the

---

[2] *See United States v. Perez*, 475 F.3d 1110, 1114 (9th Cir. 2007) (holding that "[u]nder the rule of mandate" a factual question that has been "settled on appeal" may not be reviewed by the district court, "even for apparent error."), citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895).

California Department of Fair Employment and Housing ("DFEH"), alleging "Raytheon Management" discriminated against him based on his "race/color" and "national origin/ancestry" by denying promotions for "numerous positions applied for" during the period "2005 through 2006." *Def. Ex. B22*. He requested and received an immediate right-to-sue notice, and DFEH took no further action on the complaint. *Def. Ex. A.*

The California Fair Employment and Housing Act ("FEHA") establishes a one-year statute of limitations for an employee to file a complaint with DFEH.[3] Cal. Gov. Code § 12960(d). Therefore, Raytheon argues that Zeinali cannot rely on discriminatory acts occurring prior to December 19, 2005 to support his disparate treatment claim, specifically eight instances in which Zeinali unsuccessfully applied for promotions at the company between August 2004 and January 2005. *Def. MSJ, P&As* at 12. Zeinali asserts that these adverse employment actions were part of a "continuing violation" that culminated in his termination, an act which undisputably occurred within the statute of limitations. As such, Zeinali contends that Raytheon's denial of his applications for promotion prior to December 19, 2005 may serve as a basis for liability on his disparate treatment claim.

## DISCUSSION

Starting in August 2004, Zeinali applied for seventeen positions at Raytheon. *Def. Ex. N; Pl. Ex. BB*. The requisitions for nine of the positions were cancelled, and therefore the positions were never filled. Eight positions were filled. *Wright Decl'n* ¶ 4. These are the "non-promotions" at issue:

1. October 1, 2004: Sr. Manager-Program Management
2. October 6, 2004: Manager III-Program Management
3. October 6, 2004: Sr. Principal Supply Chain Specialist
4. October 6, 2004: Manager III-Program Management
5. October 14, 2004: Engineering Fellow
6. December 7, 2004: Sr. Principal Systems Engineer
7. December 15, 2004: Manager III-Program Management
8. January 31, 2005: Manager II QA Engineering

---

[3] As part of its statutory mandate, DFEH oversees and administrates complaints regarding employment, housing and public accommodations discrimination and hate violence pursuant to FEHA, which prohibits, *inter alia*, discriminatory employment actions based on an employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation." Cal. Gov. Code § 12940(a).

*Def. Ex. N; Pl. Ex. BB*. Raytheon argues that these non-promotions are discrete acts, not sufficiently similar to Zeinali's termination in November 2006 to be brought within FEHA's one year statute of limitations under a continuing violation theory.

The continuing violation doctrine "comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations period." *Richards v. CH2M Hill, Inc*., 26 Cal.4th 798, 812 (2001). Under the continuing violation doctrine, an employer may be liable for actions that occur before the one-year period if the acts are "(1) sufficiently similar in kind . . .; (2) have occurred with reasonable frequency; [and] (3) . . . have not acquired a degree of permanence." *Richards*, 26 Cal.4th at 823; *accord*, *Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1059 (2005). "'The continuing violation doctrine is arguably the most muddled area in all of employment discrimination law.'" *Harris v. City of Fresno*, 625 F. Supp. 2d 983 (E.D. Cal. 2009), citing *Alch v. Superior Court*, 122 Cal. App. 4th 339, 365 (2004). However, the key question is generally understood to be "whether the employer's conduct occurring outside the limitations period is sufficiently linked to unlawful conduct within the limitations period that the employer ought to be held liable for all of it." *Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1042 (2002), citing *Richards*, *supra*, 26 Cal. 4th at p. 812.

Zeinali argues that the discriminatory conduct in this case began in August 2004 when his supervisor at the time, John Pickens, made a derogatory comment about Middle Easterners in Zeinali's presence. *Zeinali Depo.*, 85-86. Thereafter, Pickens and department head Glen Munoz criticized his performance and leadership skills. *Pl. Opp'n*, 15; *Pl. Exs. Z, AA & PP*. Zeinali applied for multiple promotions between August 2004 and January 2005 which he did not receive. *Zeinali Decl'n* ¶ 4. In November 2004, Zeinali applied for and was granted a lateral transfer to another department. *Pl. Ex. J*. Zeinali received a positive performance review in 2004, but he received a poor performance review in 2005. *Pl. Exs. LL & MM*. He was ineligible for promotion based on his poor performance review, and was eventually terminated in November 2006.

Zeinali asserts that this series of related adverse employment events are all within the statute of limitations under the continuing violation doctrine. Raytheon points out that the non-promotions in 2004 and early 2005 involved different decision-makers than those responsible for both his poor

1  performance review in 2005 and his eventual termination in November 2006. *Def. Reply*, 3.
2  Raytheon also notes that Zeinali filed three separate DFEH complaints – the one at issue, based on
3  Raytheon's failure to promote him, as well as a complaint based on a denial of transfer and a
4  complaint based on wrongful termination – illustrating that he viewed them as distinct acts and not
5  as part of a related, continuous course of conduct. *Id*; *Def. Exs. B22-24*.

6  The Court finds that the eight non-promotions at issue "look much more like a collection of
7  isolated employment decisions. But even assuming the conduct was sufficiently similar and frequent
8  enough to constitute a single course of conduct, the situation had reached permanence" when
9  Raytheon did not promote Zeinali and instead filled the positions with other applicants. *Cucuzza*,
10 104 Cal. App. 4th at 1042. A "'continuing violation claim will likely fail if the plaintiff knew, or
11 through the exercise of reasonable diligence would have known, [he] was being discriminated
12 against at the time the earlier events occurred.'" *Morgan v. Regents of the University of California*,
13 88 Cal.App.4th 52, 65 (2000). No later than April 19, 2005, when Raytheon hired another candidate
14 for the Manager II QA Engineering position listed above, Zeinali knew that he had not received any
15 of the promotions for which he had applied. *Pl. Ex. R*; *Zeinali Decl'n* ¶ 4. Zeinali already suspected
16 discriminatory animus stemming from the August 2004 incident with John Pickens. *Zeinali Depo.*,
17 85-86. The non-promotions had the degree of permanence that should have triggered Zeinali's
18 awareness of the need to assert his rights by filing a timely complaint with DFEH. He did not. As
19 such, the continuing violation doctrine is not applicable.

20 **CONCLUSION**

21 In sum, the undisputed evidence demonstrates that Zeinali unsuccessfully applied for eight
22 promotions at Raytheon between August 2004 and January 2005. By April 2005, the last position
23 was filled by an individual other than Zeinali. Zeinali did not file a complaint with DFEH until
24 December 2006. Accordingly, to the extent Zeinali's disparate treatment claim is based on these
25 eight non-promotions, it is barred by FEHA's one-year statute of limitations.

26 **IT IS SO ORDERED**.

27 DATED: June 29, 2011

28

Hon. Michael M. Anello
United States District Judge