**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOSSEIN ZEINALI,<br><br>   Plaintiff,<br><br>vs.<br><br>RAYTHEON COMPANY,<br><br>   Defendant. | CASE NO. 07cv1852-MMA (CAB)<br><br>**ORDER RE: PLAINTIFF'S CALIFORNIA LABOR CODE SECTION 1102.5(c) CLAIM** |

This is an employment discrimination case brought by Plaintiff Hossein Zeinali against his former employer Defendant Raytheon Company. Zeinali alleges that Raytheon failed to promote him, and ultimately terminated his employment, because he is Iranian. In addition to allegations of national origin discrimination, Zeinali claims Raytheon wrongfully terminated his employment in violation of California Labor Code section 1102.5(c), which "protect[s] employees who refuse to act at the direction of their employer or refuse to participate in activities of an employer that would result in a violation of law." Act of Sep. 22, 2003, ch. 484, § 1, 2003 Cal. Legis. Serv. 484. Raytheon has moved for summary judgment on this claim. The Ninth Circuit indicated upon remand that the issue is properly before this Court.[1] *See Zeinali v. Raytheon Co.*, 2011 U.S. App. LEXIS 7023, 1-2 (9th Cir. 2011) (internal citations omitted) ("The parties agree that the district

---

[1] The rule of mandate prohibits a lower court, upon receiving the mandate of a higher court, from "vary[ing] it or examin[ing] it for any other purpose than execution." However, "the lower court may consider and decide any matters left open by the mandate of the court." *United States v. Cote*, 51 F.3d 178, 181-82 (9th Cir. 1995) (alterations and quotation marks omitted), quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-56 (1895).

court analyzed Zeinali's California Labor Code § 1102.5 claim under subsection (b) rather than subsection (c) as is alleged in the Complaint. We vacate and remand this cause of action so that the district court may analyze it under the relevant subsection."). The parties represent that the record is complete and no further briefing is necessary. Accordingly, the Court rules as follows.

## BACKGROUND

The following facts are not reasonably in dispute. During the summer of 2006, Zeinali was employed by Raytheon as a Cost Account Manager ("CAM"), tasked with overseeing the budget of the Navigation System Team ("NST"), a component of the Ship Control System Team on the Zumwalt Destroyer Program for the Department of Defense. In August 2006, Zeinali became aware of a $1.5 million reduction in the NST's budget, which had occurred without his knowledge. Zeinali and his team leader inquired about the budget change with a representative of the finance department, who advised that he had been instructed to remove the money from the NST budget by his superiors. Zeinali complained that the money should not have been deducted without Zeinali himself preparing a Budget Change Request ("BCR"). Zeinali believed the money had been deducted from the NST budget illegally and that he might go to jail. Zeinali voiced these concerns to his supervisors, some of whom agreed that the failure to process a BCR was a violation of Raytheon's internal accounting policies.

Approximately one month later, the $1.5 million was restored to the NST budget, without Zeinali personally preparing a BCR. Zeinali once again voiced concerns about the budget changes to his supervisors. Subsequently, Zeinali requested and was granted a transfer out of his position as a CAM into a different engineering position. Shortly thereafter, Zeinali received notice that his application for a security clearance had been denied and Raytheon terminated his employment. Zeinali claims that Raytheon terminated him in retaliation for his complaints regarding the NST budget manipulation and his accusations that the company violated the law. California Labor Code section 1102.5(c) prohibits retaliatory action against an employee by an employer in such circumstances.

///

///

# DISCUSSION

## 1. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

## 2. Analysis

Raytheon moves for summary judgment as to Zeinali's whistleblower retaliation claim, arguing that he fails to establish as a matter of law that he engaged in protected activity. California Labor Code section 1102.5(c) provides: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(c). To establish a prima facie case for whistleblower retaliation under section 1102.5, "an employee

must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) that there was a causal link between the protected activity and the adverse employment action." *Love v. Motion Indus.*, 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004), citing *Morgan v. Regents of University of California*, 88 Cal. App. 4th 52, 69 (2000). It is undisputed that Zeinali suffered an adverse employment action based on his termination from employment at Raytheon.

Zeinali states that he "engaged in a protected activity when he refused to participate in Raytheon's violation of federal rules and regulations related to EVMS compliance."[2] *Pl. Opp'n*, 20. To support his assertion that he refused to participate in allegedly illegal activity, Zeinali offers only his own self-serving, contradictory, and completely muddled deposition testimony.[3]

With respect to his participation, or lack thereof, in the budget manipulation, Zeinali testified as follows:

> Q: Did anybody ever order you or require you to do anything that you thought was illegal or improper?
>
> A: They – no. I – best of my knowledge, I don't – I haven't seen anything. And I wouldn't do it, even if somebody asked me to do anything illegal.
>
> Q: Did anybody ask you to do anything illegal or improper?
>
> A: I don't recall.

*Zeinali Depo.*, 211.

---

[2] Where "EVMS" stands for Earned Value Management System, a method of oversight by the federal government. According to Zeinali, his "job duties as a CAM included preparing EVMS data to present to representatives of the Navy on a weekly basis," and "ensuring that funds were distributed in compliance with the IBR," where "IBR" stands for Integrated Baseline Review, and "to prepare BCRs." *Pl. Opp'n.*, 4-5. "One aspect of EVMS compliance is to look at BCRs." *Geisler Depo.*, 16.

[3] Zeinali also relies on the proffered expert opinion of Charles Tiefer, citing generally to paragraphs 8 through 20 of his declaration. *Pl. Opp'n.*, 20. However, the Tiefer Declaration is clearly directed at establishing that Raytheon violated federal rules and regulations, and offers no support for Zeinali's contention that he personally refused to participate in any of the alleged violations. *See, e.g., Tiefer Decl'n* ¶ 45 ("In sum, the factors support my conclusion that Raytheon Company violated federal EVMS rules and regulations and connected requirements with its $1.5 million action.").

Furthermore, Raytheon objects to multiple portions of Tiefer's declaration on multiple grounds. The Court has reviewed the objections. To the extent Tiefer asserts improper legal conclusions and bases his testimony on hearsay, the Court sustains Raytheon's objections pursuant to Federal Rules of Evidence 701 and 802. Once the objectionable portions of Tiefer's declaration are disregarded, the remainder of his testimony is of questionable relevance and little evidentiary value.

Zeinali asserts that he "refused to participate in the illegal activity by not signing off on EVMS reports that were reviewed by the federal government." *Pl. Opp'n.*, 21.  When asked about this during his deposition, Zeinali testified as follows:

Q: Did you ever refuse to sign off on any type of report or any type of document for Raytheon?

A: We have weekly EVMS report, and after this incident I refuse to sign and put my name on it.

Q: On how many occasions did you refuse to sign those reports?

A: I don't recall how many. It was weekly. Every week we do this.

Q: How many weeks did you do that for?

A: I don't know how many weeks it's gone that I didn't sign my name.

Q: Do you at some point start signing your name?

A: Yes.

Q: When?

A: I think when is the – I believe when the time that everything settled, they remove and put the money back in there.

( . . . )

Q: Did you ever tell anyone that you were refusing to sign the reports, or words to that effect?

A: I might mention it to Richard Zohn or Mark Richey.

Q: Do you recall doing that, or are you guessing?

A: I don't recall.

Q: Did anybody order you to sign the reports or direct you to sign the reports?

A: I don't recall.

Q: With regard to the reports that you did not sign, were there any type of questions raised or inquiries, or did anybody ask you about it; in other words, "Why aren't you signing these reports?" or anything like that?

A: I don't recall.

Q: Now, did you refuse to sign off on the reports, or did you just not sign off on the reports and submit them unsigned?

A: I went to Richard Zohn. I told him that, "They remove the money. I don't feel comfortable"

| | | |
|---|---|---|
| 1 | | ( . . . ) |
| 2 | Q: | But you did it right? |
| 3 | A: | I did it. |
| 4 | Q: | Did you ever refuse to do that? |
| 5 | A: | I felt extremely uncomfortable to do this. |
| 6 | Q: | Did you ever refuse to do it? |
| 7 | A: | I believe, best of my knowledge, one time I did. |
| 8 | Q: | And what happened? |
| 9 | A: | I don't recall what happened. |
| 10 | Q: | Was the report sent? |
| 11 | A: | I think they came back and they got the data. Mark Richey and myself sit down there and send the data. |
| 12 | Q: | Are you guessing or you recall? |
| 13 | A: | I am just recalling, best of my knowledge. |
| 14 | Q: | And when did that happen? |
| 15 | A: | I don't know when this is happened. |
| 16 | | ( . . .) |
| 17 | Q: | So on one occasion at some point you refused to send along your budget; right? |
| 18 | | |
| 19 | A: | On one occasion or maybe more. |
| 20 | Q: | Well, what is it? |
| 21 | A: | I don't know. |

*Zeinali Depo*, 234-35, 240-41.

Although the Court "is not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988), in this instance the Court did comb the record and as noted above, Zeinali's own uncorroborated deposition testimony is the only support for his assertion that he refused to participate in Raytheon's purported violation of federal law, as required to support a claim under California Labor Code section 1102.5(c). However, even viewing the testimony in the light most

favorable to Zeinali, it is apparent that he simply cannot remember whether he actually "refused" to do anything, much less whether he refused to participate in a purported violation of federal law. His testimony is insubstantial and contradictory. It is axiomatic that a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1996), citing *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Furthermore, "when the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen*, 7 F.3d at 138.

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). Zeinali has only his "bald assertions" supporting his claim. Zeinali's testimony does not raise a triable question of fact as to whether he engaged in protected activity within the meaning of section 1102.5(c). He offers no specific facts showing that he engaged in any sort of protected activity, and thus he cannot establish a required element of a prima facie case of retaliation. Accordingly, his claim fails as a matter of law.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** summary judgment in favor of Raytheon as to Zeinali's California Labor Code section 1102.5(c) claim. The claim is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: July 7, 2011

Hon. Michael M. Anello
United States District Judge